736 P.2d 979

THOMPSON DRILLING, INC., a New
Mexico corporation,
Plaintiff-Appellee,

v.

Sally M. Kandarian ROMIG,
Defendant-Appellant.

No. 16127.

Supreme Court of New Mexico.

May 4, 1987.

William H. Burden, Jr., Santa Fe, for defendant-appellant.

F. Stephen Boone, Los Alamos, for plaintiff-appellee.

## OPINION

SOSA, Senior Justice.

Plaintiff Thompson Drilling, Inc. (Thompson), a New Mexico corporation, brought an action against defendant Sally Kandarian Romig (Romig) to recover money due under a contract and enforcement of a mechanic's lien. Romig counterclaimed, alleging negligent misrepresentations, fraudulent misrepresentations, and breach of contract. The case was tried before a jury, which returned a verdict in the following form: "We find for the Plaintiff on the complaint in the sum of $_____." The Foreperson signed the verdict which stated:

[$]8,309.64

+ Gross Receipt Tax

+ Interest Rate Specified in Defendant's Exhibit # 43

+ Attorney Fees

After the proceedings were adjourned, Romig filed a motion to quash the verdict. But the trial court, pursuant to the jury verdict, entered a final judgment in favor of Thompson in the total amount of $26,-941.55. Romig then filed a motion for a new trial, challenging the jury's award of damages and the court's award of attorney fees and interest. This motion was denied. Romig appeals from the resulting final judgment. We affirm in part and reverse in part with respect to the award of attorney's fees.

The relevant facts can be briefly summarized as follows: On June 22, 1983, the parties entered into a "work order agreement" in which Thompson agreed to drill a water well and furnish labor and materials for $8,511.21. The agreement provided for payment upon installation of the pump. Thompson drilled a well 550 feet deep and installed the proper equipment. On July 8, 1983, Thompson billed Romig for all services and parts.

Romig, not satisfied with the quantity or quality of the water, refused to pay Thompson. In August 1983, Romig hired Pioneer Drilling to drill another well. Thompson made a final written demand for payment on Romig's counsel. Again, payment was refused. This suit followed. On appeal Romig raises six issues of alleged trial court error: (1) failure to quash the jury verdict; (2) the increased jury verdict; (3) failure to submit certain jury verdict forms; (4) refusal to allow Romig's witness to testify; (5) failure to include Romig's jury instructions; and (6) the award of attorney's fees.

## JURY VERDICT

Issues one, two, and three are dealt with respectively. Romig asserts that the jury verdict is invalid because it is ambiguous and indefinite as to the amount of damages. Thompson maintains that the verdict is unequivocal and accurately reflects the jury's intention. Thompson also contends that Romig waived any objection to the final judgment on the jury verdict because Romig's counsel failed to object or except at the time the jury returned the verdict and before the jury was discharged.

■ A valid judgment cannot be entered on a jury verdict which is neither specific nor definite regarding the amount of damages. *Sanchez v. Martinez*, 99

N.M. 66, 71, 653 P.2d 897, 902 (Ct.App. 1982). Although a verdict must state the amount due with sufficient definiteness, "strict technical accuracy is not required in the statement of the amount; and it is sufficient if the amount can be ascertained by mere mathematical calculation." 89 C.J.S. *Trial* § 497, at 161 (1955). The jury's verdict reasonably followed the court's Instruction No. 26, which states in part:

> If you should decide in favor of Plaintiff on its claim, then you must fix the amount of money damages which will restore to Plaintiff what was lost by Defendant's breach and what Plaintiff reasonably could have expected to gain. The Plaintiff's claim for damage is payment for its services and materials pursuant to the bill submitted by Plaintiff to Defendant, less the sum of $108.89 listed for the pump shelter and maintenance contract and water system.

Under this instruction, the jury was authorized to find the verdict returned. The instruction allowed the jury to award damages pursuant to the bill submitted. Thompson's bill for service and parts was in the total amount of $8,414.59, plus $315.55 in tax. The sum listed on the bill for the pump shelter, maintenance contract, and water system was for $104.95, not $108.89. It is evident, therefore, that the jury's verdict of damages for $8,309.64 was arrived at by simply subtracting $104.95 from $8,414.59. There is no ambiguity here.

The jury awarded damages for gross receipt tax, interest, and attorney fees without specifying the exact amounts.[1] Romig's second point is that the court erred in calculating the gross receipt tax, thus increasing the jury verdict to the amount of $8,612.25. She maintains that it was the exclusive province of the jury to decide the applicable gross receipt tax rate, and because this amount was indefinite, the jury's verdict should have been quashed.

We agree that the jury should determine the proper amount of damages. *See Sanchez v. Martinez*, 99 N.M. at 72, 653 P.2d at 903. A verdict, however, is generally held to be sufficient if it can be made definite and certain by reference to other matter in the case, such as reference to evidence and instructions of record. 89 C.J.S. *Trial* § 496, at 158. In the instant case, the applicable gross receipt tax rate of 3.75% is apparent from the bill, which was introduced into evidence. Because the amount of damages can be determined by a mere calculation and reference to the record, the jury verdict is sufficiently certain. *See generally Sandell v. Norment*, 19 N.M. 549, 562, 145 P. 259, 263 (1914) (amount of recovery was undisputed and could be ascertained from the pleadings). The trial court did not err in computing the gross receipt tax from the jury's verdict, where the amount intended to be stated was clear.

Romig also argues that she was prejudiced by the court's failure to submit complete jury verdict forms under NMSA 1978, UJI Civ. 13–828 (Recomp.1986). The directions for use of 13–828 provide in pertinent part: "UJI 13–828A through 13–828E will each be given to the jury in any contract case involving a counterclaim or recoupment." The court submitted to the jury verdict forms 13–828A, 13–828C, and 13–828E. Although the court failed to offer all the verdict forms required by this instruction, there is no evidence that Romig was thus prejudiced. In fact, the court submitted forms which included a finding for Romig on her counterclaim. *See* UJI Civ. 13–828C.

Moreover, we agree with Thompson that the right to object to an improper verdict is waived when not made at the time of the return of the verdict and cannot be reclaimed and revived by resorting to a motion for a new trial or on appeal. *See Fischer v. Howard*, 201 Or. 426, 463, 271 P.2d 1059, 1075 (1954). *See also Holloway*

---

1. Before trial, both parties stipulated that the damage issues of pre-judgment interest and reasonable attorney fees would be reserved for the court's consideration and determination. Consequently, after the jury returned its verdict, Thompson's counsel filed a Remittit Damna on those damages awarded.

*v. Evans*, 55 N.M. 601, 605–06, 238 P.2d 457, 459 (1951) (failure to object to possible error waives challenge on appeal). In response to this argument, Romig maintains that Thompson's assertion of alleged waiver cannot be considered because no reference to the transcript is made. The record shows that Thompson was unable to make reference to a timely objection, or the lack thereof, because those proceedings were not transcribed pursuant to Romig's designation of the record on appeal.

■ It is the duty of the appellant, Romig, to see that the record is properly prepared and completed for review of any question by an appellate court. *State ex rel. State Highway Comm'n v. Sherman*, 82 N.M. 316, 317, 481 P.2d 104, 105 (1971); *Westland Dev. Co. v. Saavedra*, 80 N.M. 615, 618, 459 P.2d 141, 144 (1969). We conclude that the record does not reflect a timely objection to the verdict.

## PROFFERED TESTIMONY AND JURY INSTRUCTIONS

Romig contends that the court erred in refusing proffered testimony that she was subject to an injunction and fine because her well was drilled without a proper permit. She also asserts that the court erred in refusing to allow the following language in Instruction No. 35: "Defendant was unable to withdraw water from the well because Plaintiff violated statutes and regulations relating to the drilling of water wells," and in refusing Romig's requested Instruction No. 13, which states: "A contract, the performance of which violates statutes or regulations prohibiting the drilling of a well without a proper permit, is illegal and unenforceable."

The parties' agreement required Romig to furnish Thompson with the well permit. Even though Romig obtained a permit only authorizing the deepening of an existing well, Thompson drilled a new or replacement well. Romig's counsel at trial, outside of the presence of the jury, made an offer of proof that David Stone, an employee of the State Engineer's Office, would testify that Romig was subject to an injunction and fine under NMSA 1978, Sections 72–12–15 and 16 (Repl.Pamp.–1985). Romig argued that the evidence was relevant because it showed the illegality of the contract and went to the issue of proper performance.

■ The court, finding the contract legal on its face, refused the proffered testimony to show that Romig was harmed, since no injunction or fine had been imposed, thus making the testimony purely speculative in nature. The court allowed the testimony for the limited purpose of showing less than substantial performance by Thompson. Romig argues that the proffered testimony would have shown that Thompson was in violation of the Statute because he drilled a well without a proper permit and therefore she was subject to an injunction and fine, citing Sections 72–12–15 and 72–12–16.[2] The penalties imposed under these provisions, however, relate to violations under the Act's requirement that a license be issued for drilling from an "underground source." For example, Section 72–12–15 provides in part: "No person owning or controlling lands shall permit the drilling of a well thereon for water from an underground source .. by any person other than a driller licensed under the provisions of this Act [72–12–12 to 72–12–17 NMSA 1978]." This section is a legitimate exercise of police power of the state. *State v. Myers*, 64 N.M. 186, 194, 326 P.2d 1075, 1081 (1958). The legislative intent is to regulate the use of, and drilling of, wells for underground water by requiring the issuance of a license. It is undisputed that Thompson was a licensed driller under Section 72–12–12. Therefore, based on the above reasoning, and because Romig suffered no actual harm, we agree with the trial court's ruling on this issue. Moreover, the trial court acts in its prerogative in refusing evidence which would confuse jurors more than it would aid them. *Sego*

---

**2.** NMSA 1978, Section 72–12–12 provides in part: "It shall be unlawful for any person, firm or corporation to begin the drilling of a well for water from an [underground source] ..., without a valid, existing license for the drilling of such well. * * *"

*v. Mains*, 41 Colo.App. 1, 578 P.2d 1069, 1072 (1978).

■ Nor do we find that the court abused its discretion in denying Romig's requested instructions. As a general rule, a party is entitled to an instruction on its theory of the case when it is supported by the evidence. *Adams v. United Steelworkers of Am.*, 97 N.M. 369, 374, 640 P.2d 475, 480 (1982). The above quoted language in Instruction No. 35 is not supported by any evidence, nor is the instruction restricted to its proper limited purpose. *Cf. Gonzales v. Sansoy*, 103 N.M. 127, 131, 703 P.2d 904, 908 (Ct.App.1984) (evidence may be admitted for limited purpose and limiting instruction may be included in the instructions given).

Finally, Instruction No. 13 was not proper since it went to the validity and enforceability of the contract. The court had previously stated that the contract's validity was an issue for its own determination, and that the evidence here showed that the contract was legal and not void, even if it was performed in an unlawful manner. *See Measday v. Sweazea*, 78 N.M. 781, 438 P.2d 525 (Ct.App.1968).

## ATTORNEY FEES

On July 31, 1985, the trial court held a hearing to determine the award of attorney's fees. The court, relying on the parties' work order agreement and Thompson's evidence concerning reasonable attorney's fees, awarded fees in the total amount of $15,945.49. The issue before this Court is whether the trial court abused its discretion in awarding attorney's fees for that amount.

The work order agreement provides in part:

(5) If the collection of any amount past due hereunder is referred to any attorney or if a claim of lien is filed on account of any work performed hereunder, Purchaser agrees to pay *reasonable attorney's fees* in an amount not less than 15% of the amount due. [Emphasis added.]

Romig argues that the trial court erred in making the fee award because Thompson held a superior bargaining position and was negligent in the performance of his duty and because the fee was oppressive. Alternatively, Romig maintains that, even if the court could award attorney's fees, this fee was excessive and not supported by substantial evidence. Finally, Romig asserts that the court erred by including the court's costs, expenses, and taxes in the award of attorney's fees.

■ This Court has long held that contract provisions between parties, such as clause five here, are valid and enforceable. *See Exchange Bank of Dallas v. Tuttle*, 5 N.M. 427, 23 P. 241 (1890). This contract allows for reasonable attorney's fees. In *Budagher v. Sunnyland Enter. Inc.*, 93 N.M. 640, 603 P.2d 1097 (1970), a case similar to the one at issue and involving a contract suit that claimed damages for attorney's fees, this Court considered a number of factors in determining the reasonableness of attorney's fees. These factors include: (1) the time and labor required—the novelty and difficulty of the questions involved and skill required; (2) the fee customarily charged in the locality for similar services; (3) the amount involved and the results obtained; (4) the time limitations imposed by the client or by the circumstances; and (5) the experience, reputation and ability of the lawyer or lawyers performing the services. *Id.* at 641, 603 P.2d at 1098. Applying these factors to the instant case, we find the fee award excessive.

The record shows that there was no evidence introduced concerning the fee customarily charged in the locality for similar services, nor was there evidence of any time limitations imposed by Thompson. And, although Thompson's counsel is an experienced, undoubtedly reputable and able lawyer, this factor alone does not support an attorney's fee award that is nearly twice the amount of the jury's verdict, particularly in light of the fact that this was not a complex case requiring the expenditure of extraordinary time and labor. The amount awarded for services performed cannot be extended beyond what was reasonably required. In fact, at the hearing Thompson's counsel conceded that if this

case had been tried solely as a breach of contract, it would have required only one-third of the time actually expended. Thompson's counsel argues that because of the counterclaims raised, fraudulent misrepresentation and negligent misrepresentation, more extensive research was necessary.

This Court has recognized that, in asserting a claim for attorney's fees under an action in contract, it is appropriate to distinguish between the amount of the attorney's fees incurred for prosecution of the complaint and counsel's fees for defense of a counterclaim. *State ex rel. Nichols v. Safeco Ins. Co. of Am.*, 100 N.M. 440, 447, 671 P.2d 1151, 1158, (Ct.App.) *cert. denied*, 100 N.M. 327, 670 P.2d 581 (1983), *cited with approval in State Sav. and Loan Ass'n. v. Rendon*, 103 N.M. 698, 702, 712 P.2d 1360, 1364 (1986). Had the trial court made such a distinction, along with considering the other factors stated, it is dubious that it would have awarded such an exorbitant fee.

 The allowance of a particular fee may be reduced if it is determined to be unreasonable or excessive. 7A C.J.S. *At-torney & Client* § 330, at 645 (1980). Accordingly, we reverse the trial court's attorney's fee award. After careful consideration of the matter, it is our opinion that an attorney's fee award for $4500 is reasonable. Furthermore, we hold that, under these circumstances, the court costs and expenses in the amount of $711.15 may be added to the award. *See Chalmers v. Hughes*, 83 N.M. 314, 491 P.2d 531 (1971).

Based on the foregoing, we affirm the trial court's judgment but reverse that portion of the judgment regarding attorney's fees. That portion of the judgment shall be reduced to $5211.15.

Each party is to bear their own costs on appeal.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and RANSOM, J., concur.