This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36717**

**KATHERINE VINYARD,**

   Plaintiff-Appellee,

v.

**NEW MEXICO HUMAN
SERVICES DEPARTMENT,**

   Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY
Mary W. Rosner, District Judge**

The Furth Law Firm, P.A.
Ben Furth
Paul Hibner
Las Cruces, NM

Dixon Scholl Carrillo P.A.
Steven S. Scholl
Robert Sanchez
Albuquerque, NM

for Appellee

Kemp Smith LLP
CaraLyn Banks
Las Cruces, NM

Conklin Woodcock & Ziegler P.C.
Christa M. Hazlett
Alisa Wigley-DeLara
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**IVES, Judge.**

**{1}** Plaintiff Katherine Vinyard sued Defendant New Mexico Human Services Department pursuant to the New Mexico Whistleblower Protection Act, NMSA 1978, §§ 10-16C-1 to -6 (2010) (WPA). Plaintiff alleged that Defendant terminated her employment with the Child Support Enforcement Division in retaliation for reporting that Linda Fischer, a lawyer who worked for Defendant, discriminated against legal assistant Anna Barajas on the basis of her race. Defendant claimed it fired Plaintiff for poor work performance.

**{2}** A jury found that Defendant violated the WPA and awarded Plaintiff $622,955 in damages. Based on the verdict, the district court entered judgment in Plaintiff's favor. In addition to ordering Defendant to pay the damages the jury awarded, the court ordered Defendant to pay $1,050,353.80 in attorney fees, costs, and gross receipts tax pursuant to the fee-shifting provision of the WPA, § 10-16C-4.

**{3}** Defendant appeals, asserting the following reversible errors: (1) insufficient evidence to support the jury's verdict; (2) denying Defendant's proposed jury instructions; (3) giving a spoliation instruction; (4) excluding two of Defendant's exhibits from evidence; (5) admitting one of Plaintiff's exhibits; (6) answering a jury question; (7) asking questions of witnesses and making comments in the jury's presence; and (8) awarding excessive attorney fees. We affirm.

**I. Defendant Failed to Preserve Its Argument That the Evidence Is Insufficient to Support the Verdict**

**{4}** Defendant challenges the sufficiency of the evidence supporting the jury's verdict on two grounds. First, Defendant contends that the evidence was insufficient to prove that Plaintiff made a disclosure that the WPA protects. Second, relying on *Wills v. Board of Regents of the University of New Mexico*, 2015-NMCA-105, 357 P.3d 453, Defendant argues that insufficient evidence established that Plaintiff reported Fischer's conduct to protect the public, rather than to communicate a personal grievance. We do not reach the merits of these arguments because Defendant failed to preserve them.

**{5}** New Mexico adheres to the general rule that to preserve an insufficient evidence argument for appeal, a litigant must move for a directed verdict at the close of all of the evidence. *See First Nat'l Bank in Albuquerque v. Sanchez*, 1991-NMSC-065, ¶ 6, 112 N.M. 317, 815 P.2d 613 (recognizing that, consistent with uniform federal precedent, New Mexico precedent holds that "the sufficiency of the evidence to support a jury verdict is not reviewable on appeal in the absence of a motion for directed verdict at the close of all the evidence"). Because Defendant did not move for a directed verdict at the close of all of the evidence, Defendant failed to preserve its insufficiency arguments.

**{6}**     Defendant contends that it preserved these arguments by moving for a directed verdict at the close of Plaintiff's case and by asking the district court to instruct the jury that Plaintiff must prove that she reported Fischer's conduct for the purpose of protecting the public. Defendant relies on *First National Bank in Albuquerque*, 1991-NMSC-065, ¶¶ 6-8, in which our Supreme Court addressed the merits of the plaintiff's argument that the evidence was insufficient even though the plaintiff did not move for a directed verdict at the close of all of the evidence. However, *First National Bank in Albuquerque* does not support Defendant's position because the court's analysis of the preservation question in *First National Bank in Albuquerque* turned on its peculiar procedural history, which differs significantly from the procedural history of the case at bar.

**{7}**     In *First National Bank in Albuquerque*, our Supreme Court observed that "at the close of all the evidence the bank was prepared to move for a directed verdict of some sort," but that "the [district] court stopped counsel for the bank from making the motion[.]" *Id.* ¶ 7.  Then, the next day, "the court allowed counsel to make their objections to the instructions that were to be given," and the plaintiff objected to a proposed instruction, arguing that the evidence did not support it. *Id.* Our Supreme Court concluded that this sequence of events called the district court's attention "to the fact that it is committing error in allowing a claim to go to the jury" at the close of all of the evidence because "both the trial judge and opposing counsel recognized that [the plaintiff's] objection to the instruction went to the sufficiency of the evidence[.]" *Id.* ¶¶ 7-8. The court therefore treated the plaintiff's objection to the instruction "as the functional equivalent of motion for directed verdict[.]" *Id.* ¶ 8.

**{8}**     Defendant has not persuaded us that it took any action that was the functional equivalent of a motion for directed verdict made at the close of the evidence. Indeed, Defendant has not identified any action that it took at the close of the evidence to notify the district court that allowing the WPA claim to go to the jury was error. Defendant does not argue that it objected to the instructions regarding Defendant's WPA claim at the close of the evidence on the ground that the evidence was insufficient. Defendant relies instead on its own proposed instruction, which would have required the jury to find that Plaintiff reported Fischer's conduct to benefit the public in order to return a verdict for Plaintiff. But Defendant proposed that instruction to support its theory of the case, and Defendant did nothing to alert the district court that by submitting the instruction it was seeking a ruling on the sufficiency of the evidence.

**{9}**     This case differs from *First National Bank in Albuquerque* in another significant respect. Unlike the plaintiff in *First National Bank in Albuquerque*, Defendant was not foreclosed from moving for a directed verdict. Counsel for Defendant in this case did not attempt to make a directed verdict motion at the close of the evidence, and the district court did not do anything to preclude such a motion. Defendant had the opportunity to move for a directed verdict at the close of the evidence but did not do so. *First National Bank in Albuquerque* does not support Defendant's position with respect to preservation.

**{10}** Because Defendant failed to preserve its arguments regarding the sufficiency of the evidence, we decline to address those arguments on the merits.

## II. The District Court Did Not Err By Declining to Give Defendant's Proposed Instructions

**{11}** Defendant argues that by rejecting two of Defendant's proposed instructions, the district court "prevented [Defendant] from presenting correct legal standards for the jury's consideration in evaluating Plaintiff's NMWPA claim." According to Defendants, the jury instructions that the district court gave allowed Plaintiff to obtain a verdict in her favor "without sufficient evidence of any risk to the public and where the only evidence of motive showed Plaintiff was acting in furtherance of personal interests." Defendant contends that two of its proposed instructions—Proposed Instructions 5 and 6—would have solved the problems it perceives.

**{12}** "We review a district court's refusal to give a proffered instruction de novo to determine whether the instruction correctly stated the law and was supported by the evidence presented at trial." *Silva v. Lovelace Health Sys., Inc.*, 2014-NMCA-086, ¶ 13, 331 P.3d 958. "As a general rule, a party is entitled to have the jury instructed on all correct legal theories of the case that are supported by substantial evidence." *Sonntag v. Shaw*, 2001-NMSC-015, ¶ 20, 130 N.M. 238. "If instructions, considered as a whole, fairly present the issues and the law applicable thereto, they are sufficient. Denial of a requested instruction is not error where the instructions given adequately cover the issue." *Collins v. St. Vincent Hosp., Inc.*, 2018-NMCA-027, ¶ 21, 415 P.3d 1012 (internal quotation marks and citation omitted), *cert. denied*, 2018-NMCERT-___ (No. S-1-SC-36837, Mar. 26, 2018). "A trial court's refusal to submit a jury instruction is not error if the submission of the instruction would mislead the jury by promoting a misstatement of the law." *Id.* (internal quotation marks and citation omitted).

### A. Defendant's Proposed Instruction 5

**{13}** Defendant's Proposed Instruction 5 provides:

> The [WPA] protects the communication of employees who expose unlawful action by other employees and thereby benefit the public. Communication relating to personal grievances or communication that primarily benefits the individual employee is not protected under the [WPA].

> The [WPA] is designed to protect employees who risk their own personal job security for the benefit of the public.

Defendant argues that the district court erred by declining to give this instruction because the requirement that a disclosure benefit the public is "a key component of" WPA case law. Defendant relies on *Wills*. Defendant is correct that in *Wills* we accepted the distinction that federal courts have drawn between "whistleblowing that benefit[s] the

public" and "communications regarding personal grievances that primarily benefit the individual employee." 2015-NMCA-105, ¶ 20. We explained that "[o]nly the former is protected by the whistleblower protection laws." *Id.* However, assuming without deciding that an instruction on this topic would have been appropriate, Defendant's proposed instruction misstates the law and, if given, would have improperly pruned the protection the WPA guarantees. Defendant's proposed instruction indicated that in order to return a verdict for Plaintiff, the jury would have to find that she benefited the public by "expos[ing] unlawful action." But the WPA protects significantly more than this. As relevant here, the WPA prohibits public employers from "tak[ing] any retaliatory action against a public employee" who "communicates to the public employer . . . information about an action or a failure to act that the public employee *believes in good faith* constitutes an unlawful *or improper act*[.]" Section 10-16C-3 (emphasis added). Defendant's instruction omits two key components of the statutory language: (1) an employee's good faith belief and (2) a reported act that is improper, even if it is not unlawful.[1] *See* § 10-16C-2(E) (defining "unlawful or improper act" to include "a practice, procedure, action or failure to act on the part of a public employer that . . . constitutes malfeasance in public office" or "constitutes gross mismanagement, a waste of funds, an abuse of authority or a substantial and specific danger to the public"). Under Defendant's proposed instruction, Plaintiff would have had the burden of proving that she reported conduct that was actually unlawful, when in fact her burden was less onerous. Under the plain language of the WPA, she had to prove that she reported Fischer's conduct believing *in good faith* that it was either unlawful *or* improper. Whether the conduct was in fact unlawful was not dispositive, contrary to Defendant's proposed instruction. By giving Defendant's proposed instruction, the district court would have misstated the law, misleading the jury by giving it the false impression that the WPA protects less conduct than it actually does. *See Collins*, 2018-NMCA-027, ¶ 21 (recognizing that no error occurs when a district court declines to give an "instruction [that] would mislead the jury by promoting a misstatement of the law"). The district court did not err by refusing to give Defendant's Proposed Instruction 5.

## B. Defendant's Proposed Instruction 6

{14}    Like Defendant's Proposed Instruction 5, Defendant's Proposed Instruction 6 would have improperly limited the protections of the WPA. But it would have done so in a different way—by making an overly broad statement about what the WPA does *not* protect. The instruction at issue provides, in pertinent part,[2] that "[r]eporting a difference

---

[1] The district court gave a legally correct instruction that addressed both concepts: "To engage in protected activity under the [WPA], Plaintiff . . . need not show an unlawful or improper act occurred. Instead, Plaintiff . . . must show she had a reasonable, good faith belief that such act occurred. A 'good faith' belief is when a reasonable basis exists in fact as evidenced by the facts available to the public employee." This instruction tracks the language of Section 10-16C-3 quoted above and the WPA's definition of "good faith." *See* § 10-16C-2(A) (defining "good faith" as "a reasonable basis exists in fact as evidenced by the facts available to the public employee").

[2] Defendant's Proposed Instruction 6 also includes statements that sought to explain that a good faith belief that the employee was reporting improper or illegal conduct suffices under the WPA. Those statements are inconsistent with Defendant's Proposed Instruction 5, which, as we have explained, would have required Plaintiff to prove that she reported unlawful conduct. Giving both of Defendant's proposed instructions would have confused the jury.

of opinion, a personal employment grievance, or dissatisfaction with a decision made by management is not the type of communication protected under the WPA." Under this instruction, employees who report either of the following will be without the benefit of the WPA's protections: (1) *any* difference of opinion of *any* kind; or (2) dissatisfaction of *any* kind about *any* type of management decision. For example, an employee who makes a good-faith report of dissatisfaction with a management decision on the grounds that the decision is "unlawful or improper," § 10-16C-3, would have no protection from retaliation under the WPA, contrary to the plain language of the statute. So, under Defendant's instruction, employees who make good-faith reports about dissatisfaction with a management decision to fire a person based on, among other things, national origin, gender identity, or serious medical condition would have no protection from retaliation under the WPA. But because discriminatory management decisions like these violate state law, *see* NMSA 1978, § 28-1-7(A) (2004, amended 2019), the WPA protects an employee who communicates dissatisfaction about such decisions, *see* § 10-16C-2(E)(1). Because the proposed instruction included a misstatement of applicable law, the district court did not err by declining to give it.

### III. Defendant Fails to Demonstrate That the District Court Erred by Giving a Spoliation Instruction

**{15}** Defendant contends that the district court erred by giving the jury an instruction on spoliation of evidence based on UJI 13-1651 NMRA. By giving a spoliation instruction, a district court exercises its inherent power to sanction a litigant. *Rest. Mgmt. Co. v. Kidde-Fenwal, Inc.*, 1999-NMCA-101, ¶¶ 8, 18, 127 N.M. 708, 986 P.2d 504. We review such sanctions for abuse of discretion. *Id.* ¶ 8. When determining whether to give a spoliation instruction, district courts "should consider whether the loss, destruction or alteration was intentional, whether there was a reasonable possibility of a lawsuit involving this evidence, whether the party requesting the instruction acted with due diligence in preserving the evidence and whether the evidence would have been relevant to a material issue in the case." UJI 13-1651 comm. cmt.; *see also Torres v. El Paso Electric Co.*, 1999-NMSC-029, ¶ 53, 127 N.M. 729, 987 P.2d 386 (recognizing that courts should consider the listed factors whenever they are determining appropriate sanction for spoliation), *overruled on other grounds by Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 23 n.3, 134 N.M. 43, 73 P.3d 181. Defendant's briefs do not develop any argument based on these factors, and we decline to develop such an argument for Defendant. *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them."). We will therefore not consider whether the district court abused its discretion in its analysis of these factors or in its ultimate decision that the appropriate sanction here was a jury instruction rather than some other sanction. We are therefore left with a narrow issue: whether the trial evidence supported giving the spoliation instruction.

**{16}** We conclude that it did. Plaintiff claimed that Defendant failed to provide her with one of the daily logs that she had been in the habit of making since she started working in management in 2001. The particular log at issue was from May 13, 2014, the day

when Plaintiff alleged she reported Fischer's conduct to Defendant. Plaintiff testified that she made a handwritten log on May 13, that she left all of her handwritten notes in her office drawer on her last day of employment, and that when she asked Defendant for the logs, Defendant refused to provide them. Plaintiff also introduced evidence that Defendant assigned Fischer—the subject of Plaintiff's complaint—to collect Plaintiff's work papers from her office after she was terminated, and that Fischer completed that task. This evidence sufficed to support the spoliation instruction, which provided that Plaintiff "says that evidence within the control of Defendant . . . was not returned to her. If you find that this happened, without reasonable explanation, you may, but are not required to, conclude that the evidence would be unfavorable to Defendant." The district court did not err by giving this instruction.

## IV. The District Court's Evidentiary Rulings Do Not Require Reversal

**{17}** We review Defendant's challenges to the district court's evidentiary rulings "under an abuse of discretion standard," and we "will not reverse in the absence of a clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

## A. The Notice of Contemplated Action and Notice of Final Action

**{18}** Defendant argues that the district court erred by excluding from evidence the notice of contemplated action (NCA) and notice of final action (NFA) that Defendant prepared in the course of the administrative proceedings that culminated in the termination of Plaintiff's employment. Specifically, Defendant claims the NCA and NFA were admissible under Rule 11-803(3) NMRA to prove what Defendant's state of mind was when it was contemplating Plaintiff's termination and when it terminated her. Defendant's theory at trial was that it fired Plaintiff because of "poor job performance," that "retaliatory action was not a motivating factor," Section 10-16C-4(B), and that the NCA and NFA were evidence of Defendant's motive. Although we agree with Defendant that its motive was relevant, we disagree that the NCA and NFA were admissible evidence of Defendant's motive.

**{19}** The district court did not abuse its discretion by excluding the NCA and the NFA because both documents consisted largely of inadmissible hearsay evidence regarding the *reasons* for Defendant's alleged state of mind when it terminated Plaintiff. "[E]vidence demonstrating the declarant's state of mind is admissible as an exception to the rule against hearsay" pursuant to Rule 11-803(3), but "evidence explaining the *reasons* for the declarant's state of mind is inadmissible." *State v. Hnulik*, 2018-NMCA-026, ¶ 11, ___ P.3d ___ (emphasis added), *cert. denied*, 2018-NMCERT-___ (No. S-1-SC-36909, Mar. 26, 2018). In other words, Rule 11-803(3) "does not permit evidence explaining *why* the declarant held a particular state of mind." *Hnulik*, 2018-NMCA-026, ¶

11 (emphasis added) (internal quotation marks and citation omitted). The NCA and NFA consist largely of evidence that falls within this prohibited category and little, if any, evidence that goes directly to Defendant's state of mind at the time. Both the NCA and NFA include sections titled "Background Information" and "Acts Constituting Just Cause," which include specific allegations about Plaintiff's work performance, such as: (1) "staff began to complain about your unprofessional interactions with them" and (2) "employees working in your offices feel that your interactions with them have been rude and negative." These are just two of many statements in the NCA and NFA that do not describe *what* Defendant's motive for firing Plaintiff purportedly was (Defendant's belief that plaintiff's poor job performance constituted just cause) but instead explain *why* Defendant might have had that motive (Defendant's receipt of allegations regarding specific problems with Plaintiff's performance). Because such hearsay explaining the underlying reasons for a motive is not admissible under Rule 11-803(3), the district court did not abuse its discretion by excluding the NCA and NFA.

## B.    The Stipulated Pre-Hearing Order

**{20}**    Defendant argues that the district court erroneously admitted the stipulated pre-hearing order (SPO), a document that an administrative law judge entered in the proceedings involving Plaintiff's termination after counsel for both Plaintiff and Defendant signed it. The stipulated fact section of the SPO included a sentence identifying the subject of "Barajas's emailed complaint" as "discriminatory treatment she had received on May 13, 2014 from Attorney Linda Fischer." Defendant and Plaintiff disputed whether counsel for Defendant had stipulated to the subject of the email by mistake. Citing Rule 11-403 NMRA, Defendant argues that whatever probative value the SPO might have had "was substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury." Defendant contends that these dangers arose from the admission of the SPO into evidence coupled with an instruction informing the jury that the attorneys for Defendant and Plaintiff had agreed that the evidence would show that the subject of Barajas's email was "discriminatory" treatment by Fischer.

**{21}**    Plaintiff argues that Defendant failed to preserve the argument it makes on appeal because Defendant did not object to the admission of the SPO based on Rule 11-403 during trial. We agree. During trial, at the time Plaintiff moved to admit the SPO, Defendant's only objection was to the document's relevance under Rule 11-401 NMRA and Rule 11-402 NMRA. Defendant did not mention Rule 11-403 or argue that the danger of unfair prejudice and confusion substantially outweighed the probative value of the SPO. Defendant contends that it preserved the Rule 11-403 issue by objecting under that rule when the parties were litigating motions in limine, but our Supreme Court has held to the contrary. "[M]otions in limine do not sufficiently preserve an issue because the rulings on them are subject to change, depending on the nature of the relevant evidence at trial." *State v. Carrillo*, 2017-NMSC-023, ¶ 23, 399 P.3d 367. Defendant did not preserve its Rule 11-403 argument.

**{22}** We will therefore reverse only "when plain error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Living Cross Ambulance Serv., Inc. v. N.M. Pub. Regulation Comm'n*, 2014-NMSC-036, ¶ 11, 338 P.3d 1258 (alteration, internal quotation marks, and citation omitted). Defendant has not argued, or even asserted, in its brief in chief or its reply brief that admission of the SPO meets the plain error standard, if any error occurred at all, and we will not develop such an argument for Defendant. *Elane Photography, LLC*, 2013-NMSC-040, ¶ 70.

## V.     The District Court's Comments and Questions in the Jury's Presence Do Not Warrant Reversal

**{23}** Defendant contends that the district court "participated at trial to an impermissible degree" by questioning witnesses and commenting on testimony in the presence of the jury during trial. Defendant claims that the district court's questions and comments "interfered with [Defendant's] presentation of its case, assisted Plaintiff with hers, and detrimentally reflected on [Defendant's] credibility." It is undisputed that Defendant did not object at trial to any of the conduct that it now claims is problematic, but Defendant contends that preservation was not necessary because of the nature of the claimed error. Defendant relies on Rule 11-605 NMRA for the propositions that the judge who presides at trial "may not testify as a witness" and that a "party need not object to [a judge's improper testimony] to preserve the issue." But Rule 11-605 does not excuse Defendant's failure to object because the judge in this case did not "testify as a witness." Defendant does not contend, much less demonstrate, that the judge was ever sworn in as a witness or that she gave testimony. Defendant identifies only comments that the judge made and questions that the judge asked during the testimony of witnesses. Because Rule 11-605 does not apply here, we reject Defendant's argument on the merits to the extent that it is based on Rule 11-605 and conclude that the plain error standard applies to what remains of Defendant's argument. The remaining argument relies on precedent regarding the limits of a judge's discretion to question witnesses and comment in the presence of the jury. *See State v. Sanchez*, 1991-NMCA-037, ¶¶ 27-28, 112 N.M. 59, 811 P.2d 92 (discussing a court's remarks and when the remarks become prejudicial); *see also State v. Gomez*, 2001-NMCA-080, ¶ 20, 131 N.M. 118, 33 P.3d 669 (same). But Defendant has not argued, or even asserted, that the judge's comments and questions rose to the level of plain error, if they were erroneous at all, and we decline to develop such an argument for Defendant. *Elane Photography, LLC,* 2013-NMSC-040, ¶ 70. We have no basis for concluding that plain error occurred.

## VI.     The District Court's Answer to the Jury's Questions Regarding Attorney Fees and Costs Does Not Warrant Reversal

**{24}** Defendant argues that we should reverse the judgment and order a new trial because the judge erroneously answered the jury's questions about attorney fees and costs. During its deliberations, the jury asked, "Who pays court costs? Lawyer fees? How much are lawyer fees—in percentage or set money?" After discussing these questions with counsel and hearing argument about how to respond to the question, the

district court answered as follows over Defendant's objection: Plaintiff "has a contingency fee agreement with her attorneys—meaning [P]laintiff pays a percentage of any recovery awarded to her to her attorneys for their fees. If [Plaintiff] prevails, the court will determine the appropriate amount[s] of attorney[] fees and costs." Defendant argues that this answer could have caused the jury to award damages in an amount greater than the damages Plaintiff actually suffered. Defendant's theory is that the jury might have added some amount to its damages award to compensate Plaintiff for the attorney fees that the jury believed would be deducted from her award. When, as in this case, the district court's jury instructions accurately state the law, our standard of review for instructions and answers that the district court gives to jury questions is abuse of discretion. *State v. Wall*, 1980-NMSC-034, ¶ 10, 94 N.M. 169, 608 P.2d 145, *overruled on other grounds by State v. Lucero*, 1993-NMSC-064, ¶ 13, 116 N.M. 450, 863 P.2d 1071.

**{25}**   We do not agree with the premise of Defendant's argument—that the court's answer invited the jury to award damages to compensate Plaintiff for her attorney fees and costs. The court explained that "the court will determine the appropriate amount[s] of attorney[] fees and costs." Because this communicated to the jury that it had no role to play in awarding damages for fees and costs, the district court did not abuse its discretion.

**{26}**   Even if the premise of Defendant's argument was correct, reversal would not be appropriate because the jury did not improperly include award damages to compensate Plaintiff for her attorney fees. The jury instructions on damages included an instruction that allowed the jury to award damages for only three categories of harm: "front pay, two times the amount of back pay with interest, and compensation for emotional damages sustained as a result of the violation of the [WPA]." The district court also instructed the jury that Plaintiff was "required to prove her damages by a greater weight of the evidence" and that any damages award "must be based on proof and not upon speculation, guess or conjecture[]" and "must be fair compensation, no more and no less." Because we presume the jury followed these instructions, *Kilgore v. Fuji Heavy Indus. Ltd.*, 2009-NMCA-078, ¶ 26, 146 N.M. 698, 213 P.3d 1127, we must also presume the jury did not award additional damages to compensate Plaintiff for attorney fees. To award damages for fees, the jury would have had to violate the instructions by (1) including in its verdict some amount of damages for a category other than the three categories the instructions allowed; (2) awarding damages based on speculation and conjecture about how much the attorney fees were rather than the evidence, as the parties presented no evidence regarding attorney fees; and (3) taking up the issue of attorney fees despite the district court stating in its answer to the jury's question that the court would determine those fees.

**{27}**   The record confirms that the jury followed the damages instructions. The jury did not return a general verdict stating the total amount of damages. Instead, the jury completed a special verdict form that only allowed the jury to make entries for the three categories of damages included in the jury instructions: back pay with interest, front pay, and emotional damages. The special verdict form required the jury to specify an amount

of damages for each category, and the jury did so. The amounts the jury awarded give us additional confidence. The jury awarded $330,003 in back pay—exactly the amount of back pay Plaintiff's expert calculated multiplied by two pursuant to the WPA, plus exactly the amount of interest the expert calculated. The jury awarded $241,952 in front pay—exactly the amount Plaintiff's expert calculated for time that remained in 2017 at the time of trial as well as for 2018, 2019, 2020, and 2021. The only other award was $51,000 in emotional damages. The verdict form did not include damages to compensate Plaintiff for attorney fees or costs.

**{28}** The district court did not invite the jury to award damages for attorney fees and costs, and the jury did not award such damages. Thus, the district court's answer to the jury's question is not reversible error.

## VII. Defendants Have Not Demonstrated Any Reversible Error in the District Court's Award of Attorney Fees

**{29}** Defendant challenges the district court's award of attorney fees to Plaintiff, arguing that (1) substantial evidence does not support the fees awarded for the work of one of Plaintiff's attorneys and (2) the results Plaintiff's counsel received did not justify the 1.25 multiplier on the lodestar.[3] Applying our deferential standard of review, we reject both arguments.[4]

**{30}** When, as in this case, an employee successfully prosecutes a WPA claim against an employer, the fee-shifting provision of the WPA applies; the "employer shall be required to pay the litigation costs and reasonable attorney fees of the employee." Section 10-16C-4(A). The district court used the lodestar method of determining a reasonable attorney fee, which involves "multiplying the hours Plaintiff['s] counsel reasonably spent on the litigation by a reasonable hourly rate." *Kennedy v. Dexter Consol. Sch.*, 2000-NMSC-025, ¶ 34, 129 N.M. 436, 10 P.3d 115. The product "serves as a starting point for the calculation of a reasonable fee." *Atherton v. Gopin*, 2012-NMCA-023, ¶ 7, 272 P.3d 700. Under the lodestar method, district courts should consider "(1) the time and effort required, considering the complexity of the issues and the skill required; (2) the customary fee in the area for similar services; (3) the results obtained and the amount of the controversy; (4) time limitations; and (5) the ability, experience, and reputation of the attorney performing the services." *Nava v. City of Santa Fe*, 2004-NMSC-039, ¶ 24, 136 N.M. 647, 103 P.3d 571 (internal quotation marks and citation omitted). "The factors are not of equal weight, and all of the factors need

---

[3]Defendant makes various assertions in its briefs indicating that it disagrees with the district court's award of fees for reasons other than the two listed in the text. However, Defendant only presents legal argument regarding the two claims of error identified in the text. To the extent that Defendant intended to raise additional claims of error, it did not develop arguments in support of those claims, and we therefore decline to address them. *Elane Photography, LLC*, 2013-NMSC-040, ¶ 70.

[4]Defendant also argues the district court's answer to the jury's question about fees allowed the jury to award fees, which precluded the court from making any award of fees whatsoever. According to Defendant, the district court's approach allowed double recovery. We disagree because, as explained above, the jury did not award damages to compensate Plaintiff for attorney fees.

not be considered." *Atherton*, 2012-NMCA-023, ¶ 6 (internal quotation marks and citation omitted).

**{31}** "An award of attorney fees is reviewed for an abuse of discretion." *In re N.M. Indirect Purchasers Microsoft Corp.*, 2007-NMCA-007, ¶ 6, 140 N.M. 879, 149 P.3d 976. If the district court has correctly applied the law, we will reverse only if the district court's discretionary decision is "contrary to logic and reason." *Id.* (internal quotation marks and citation omitted). "The test is not what [this Court] would have done had we heard the fee request, but whether the [district] court's decision was clearly against the logic and effect of the facts and circumstances before the court." *Id.* (internal quotation marks and citation omitted). In other words, we will not attempt to stand in the shoes of the district court judge, substituting our judgment for hers.

**{32}** We begin with Defendant's argument that substantial evidence did not support the award of fees for the time spent by Paul Hibner. Defendant contends that an hourly rate of $160 for Hibner for time he spent on the case as a licensed lawyer and $100 for time he spent as a paralegal and law clerk was unreasonable in light of his experience, knowledge, and qualifications. Having reviewed the evidence that Plaintiff submitted regarding Hibner's hourly rate, we conclude that the district court did not abuse its discretion in setting reasonable hourly rates for Hibner. Hibner received his diploma in paralegal studies in 2009, and he graduated from law school in 2015 and obtained his law license in 2016, while Plaintiff's case was pending. Rather than awarding Plaintiff fees for Hibner at the hourly rate of $160 for all of his time, the district court used an hourly rate of $100 for 351 hours of time spent before Hibner became a licensed attorney. In determining appropriate rates, the district court was permitted to rely on the evidence in conjunction with its own experience in the legal community generally and in Plaintiff's case in particular. *See Microsoft Corp.*, 2007-NMCA-007, ¶ 65 ("The judge, familiar with the case and the normal rates in the area, may rely on his [or her] own knowledge to supplement the evidence regarding a reasonable hourly rate."). Precedent also allowed the district court to consider Hibner's "ability," *Nava*, 2004-NMSC-039, ¶ 24, which the district court was in the best position to assess, having observed his work throughout the litigation. The court did not abuse its discretion in setting hourly rates for Hibner.

**{33}** Defendant also argues that the district court authorized compensation for an excessive number of hours spent by Hibner. Plaintiff requested fees for 1,280.3 hours of Hibner's time. The district court reduced this amount by 75 hours to account for block billing and by an additional 81.9 hours because it concluded that the cost of his work on a particular project was excessive. Having carefully reviewed the pertinent parts of the record, we conclude that the district court did not abuse its discretion by not further reducing Hibner's hours.

**{34}** Defendant's final argument is that the district court erred by multiplying the lodestar by 1.25 in calculating the final fee award. "An award based on a lodestar may be increased by a multiplier if the [district] court finds that a greater fee is more reasonable after the court considers the risk factor and the results obtained." *Atherton*,

2012-NMCA-023, ¶ 7 (internal quotation marks and citation omitted). We review the district court's decision for abuse of discretion. *See id.* ¶ 5. "[T]he district court has discretion to apply a multiplier to the lodestar value." *Id.* ¶ 9 (internal quotation marks and citation omitted); *see Microsoft Corp.*, 2007-NMCA-007, ¶ 75 (reviewing lodestar determination for abuse of discretion).

**{35}**   In support of its decision to award a multiplier in this case, the district court found that Plaintiff's counsel won a verdict in "a high-risk case;" that the case was "highly contentious" and heavily litigated; that counsel financed the litigation and would have to finance the appeal; and would have to wait to be paid for two to four years. Defendant does not challenge any of these findings on appeal. Nor does Defendant contend that the risk Plaintiff's counsel took, the labor-intensive nature of the litigation, and the delay in payment provide no justification for the multiplier and total fee award.

**{36}**   Instead, Defendant argues that the multiplier was unwarranted because the result that Plaintiff's counsel achieved was not exceptional, the jury's award of damages was less than what Plaintiff sought at trial, and the amount of attorney fees was greater than the amount the jury awarded Plaintiff. Defendant does not cite any case holding that the law categorically bars multipliers under any of the circumstances that Defendant complains of here. Nor does Defendant cite any precedents analogous to this case in which courts barred multipliers based on the types of arguments Defendant makes here.

**{37}**   Defendant cites *Thompson Drilling, Inc. v. Romig*, 1987-NMSC-039, 105 N.M. 701, 736 P.2d 979, in support of its contention that the fee awarded to Plaintiff's counsel "is almost two times greater than the jury's verdict, which is not proportional and is unreasonable on its face." But *Thompson Drilling* does not hold, or even suggest, that any particular fee-to-verdict ratio is facially unreasonable. Instead, our Supreme Court reversed the fee award based on the particular facts of the case before it. *See id.* ¶¶ 21-22 (noting, among other things, that the fee award was based on time counsel spent prosecuting breach of contract claim and time spent defending counterclaims and that it is appropriate to distinguish between the two when awarding fees). Defendant does not point out any similarity between *Thompson Drilling* and this case, and we see none.

**{38}**   Defendant also argues that "fee awards are routinely reduced when the fees are not proportional to the amount awarded to the plaintiff." However, none of the cases Defendant relies on involved a judgment obtained pursuant to the WPA or any other fee-shifting statute. *See Lenz v. Chalamidas*, 1991-NMSC-099, ¶¶ 1-2, 5, 113 N.M. 17, 821 P.2d 355 (addressing enforcement of lien); *Calderon v. Navarette*, 1990-NMSC-098, ¶ 7, 111 N.M. 1, 800 P.2d 1058 (addressing an award of attorney fees for quantum meruit); *Thompson Drilling, Inc.*, 1987-NMSC-039, ¶¶ 18-20, 22-23, 105 N.M. 701, 736 P.2d 979 (addressing attorney fees available pursuant to a contract); *Ulibarri v. Gee*, 1987-NMSC-113, ¶¶ 1, 6-8, 106 N.M. 637 748 P.2d 10 (same). Fee-shifting statutes involve different considerations. They provide for defendants to pay the reasonable attorney fees of prevailing plaintiffs in order to encourage private litigants and their lawyers to prosecute claims on behalf of the public. *See Rio Grande Sun v. Jemez*

*Mountains Pub. Sch. Dist.*, 2012-NMCA-091, ¶ 19, 287 P.3d 318 (recognizing that "fee-shifting statutory schemes" are designed to "encourage[] individuals to enforce" those statutes "on behalf of the public"). In such statutory fee cases, "attorney fees awarded should reflect the full amount of fees fairly and reasonably incurred by the plaintiff in securing an award under the statutory scheme[]" because without the incentive of such compensation, prospective plaintiffs might have difficulty pursuing their claims. *Id.* (alteration, internal quotation marks, and citation omitted). In fee-shifting cases like Plaintiff's, courts generally use the lodestar method "because it provides adequate fees to attorneys who undertake litigation that is socially beneficial, *irrespective of the pecuniary value to the [plaintiffs].*" *Microsoft Corp.*, 2007-NMCA-007, ¶ 34 (emphasis added). No proportionality test constrained the district court, which used appropriate methodology to calculate the lodestar—taking steps to ensure that the number of hours and hourly rates were reasonable—and then to determine whether a multiplier was warranted and if so, what the multiplier should be. This established methodology produced a fee award significantly greater than the verdict, but that does not mean that the court misapplied the law or otherwise abused its discretion.

**{39}** Defendant has not established that the district court erred in its award of fees.

**CONCLUSION**

**{40}** We affirm.

**{41}** **IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge**